## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CORNELIUS A. HARTZ,

       Plaintiff,

v.

       Case No. 14-3237-DDC-JPO

DENNIS SALE, D.O., et al.,

       Defendants.

---

## MEMORANDUM AND ORDER

Plaintiff brings this lawsuit under 42 U.S.C. § 1983 against Dr. Dennis Sale, Brian Cole, Corizon Health, Inc. ("Corizon"), and the Shawnee County Department of Corrections ("SCDOC").  Plaintiff alleges that defendants violated the Eighth Amendment by failing to provide him proper medical care for facial fractures during his detention at the Shawnee County Jail in Topeka, Kansas.  This matter comes before the court on defendants Corizon, Brian Cole, and SCDOC's Motion for Summary Judgment (Doc. 34) and defendant Dennis Sale's Motion for Summary Judgment (Doc. 44).  For the reasons explained below, the court grants both motions.

### I.  Procedural Background

Proceeding pro se, plaintiff filed this § 1983 action on December 29, 2014.  He alleges violations of "the adequate care clause of the 8th amendment to be free of cruel and unusual punishment."  Doc. 1 at 6.  Plaintiff identifies defendant Dennis Sale as the "Head Doctor" and alleges that he failed "to fully investigate [plaintiff's] injuries and follow recommendations of an outside specialist."  *Id.* at 1.  Plaintiff contends that Dr. Sale's actions were reckless and caused him bodily harm.  *Id.* at 2.  Plaintiff refers to defendant Brian Cole as the "Director of Jail" and alleges that his "actions [have] demonstrated [a] deliberate indifference to unconstitutional

actions cause[d] by the Corizon Clinical Head Doctor Sale." *Id.* at 2. Plaintiff contends that Mr. Cole's actions "constitute[ ] the unnecessary and wanton infliction of pain." *Id.* Plaintiff seeks nominal damages of $3,078.04, compensatory damages of $350,000 for "mental and emotional injury," and $5 million for punitive damages. Doc. 27 at 7.

On March 6, 2015, defendants filed a Martinez Report (Doc. 17). The Martinez Report is an administrative record, assembled by the prison, that documents the factual investigation of a prisoner's claims.[1] On February 9, 2016, defendants Corizon, Brian Cole, and SCDOC filed a Motion for Summary Judgment. Doc. 34. On the same day, these defendants filed a Notice to a Pro Se Litigant Who Opposes a Motion for Summary Judgment (Doc. 36), as our local rule, D. Kan. Rule 56.1(f) requires. On March 22, 2016, defendant Dennis Sale filed a Motion for Summary Judgment. Doc. 44. Defendant Dennis Sale also filed a contemporaneous Notice to a Pro Se Litigant Who Opposes a Motion for Summary Judgment (Doc. 46).

On March 23, 2016, Magistrate Judge James P. O'Hara held a scheduling conference with the parties. During that conference, plaintiff acknowledged that he did not need discovery from defendants to respond to the pending summary judgment motions. Doc. 48 at 1. Although plaintiff was out of time to file a response to defendants Corizon, Brian Cole, and SCDOC's summary judgment motion, Judge O'Hara granted plaintiff an extension until April 15, 2016, to file responses to both summary judgment motions. *Id.*

On April 18, 2016, defendants filed a Joint Request for Entry of Summary Judgment. Doc. 50. In their filing, defendants requested that the court enter summary judgment against

---

[1]     The Tenth Circuit endorsed the use of Martinez Reports in *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). The court considers the Martinez Report as part of the summary judgment record and treats the report like it would an affidavit. If plaintiff presents no evidence conflicting with the factual findings contained in the Martinez Report, the court may treat those findings as uncontroverted facts. *Cf. Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (explaining that a court cannot accept the factual findings of a Martinez Report if the prisoner presents conflicting evidence).

plaintiff's claims for two reasons:  (1) the arguments asserted in their motions supported the entry of summary judgment against plaintiff's claims; and (2) plaintiff had failed to file a timely response to the summary judgment motions.

On May 11, 2016, plaintiff filed a single page response asking the court to deny defendants' motions for summary judgment.  Doc. 52 at 1.  Then, on May 18, 2016, plaintiff filed a document titled "Discovery" which was docketed as a Supplement to his response to the summary judgment motions.  Doc. 55.  Plaintiff next moved for leave to file a response out of time on May 26, 2016.  Doc. 57.  He attached to that motion a proposed "Response to Defendant[s'] Motion[s] for Summary Judgment[ ]."  Doc. 57-1.  The attachment is almost identical to the Supplement (Doc. 55) that plaintiff filed on May 18.  The court granted plaintiff's Motion for Leave, noting it would consider plaintiff's response when ruling on defendants' summary judgment motions.  Doc. 58.  The court also considers plaintiff's other filings (Docs. 52, 55), to the extent these are construed as responses to the summary judgment motions and are different from the response plaintiff filed out of time (Doc. 57-1).

Defendants filed a Joint Reply (Doc. 56) on May 25, 2016.  Thus, the summary judgment motions are fully briefed and ripe for the court's consideration.

## II.    Pro Se Litigant's Lack of Compliance with the Summary Judgment Rules

As stated above, defendants served plaintiff with a Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion ("Pro Se Notice"), as D. Kan. Rule 56.1(f) requires.  This notice advised plaintiff that if he did "not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant[s], the court may accept defendant[s'] facts as true, in which event [plaintiff's] case may be dismissed and judgment entered in defendant[s'] favor without a trial."  Docs. 36 at 2, 46 at 2.

The Pro Se Notice also attached the federal and local rules governing summary judgment motions.  Docs. 36-1, 36-2, 46 at 4–6.  The text of Rule 56(c) describes the required procedure for both the moving and nonmoving party when supporting factual positions in summary judgment briefing.  Docs. 36-1 at 1, 46 at 6 (providing the text of Fed. R. Civ. P. 56(c)).  It also explains that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion" or "(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Docs. 36-1 at 1–2, 46 at 6 (providing the text of Fed. R. Civ. P. 56(e)(2) & (3)).  Similarly, D. Kan. Rule 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."  Docs. 36-2 at 1, 46 at 4 (providing the text of D. Kan. Rule 56.1(a)).  To controvert facts in the fashion the rule demands, D. Kan. Rule 56.1(b)(1) requires the nonmoving party to number the facts and "refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed."  Docs. 36-2 at 1, 46 at 4 (providing the text of D. Kan. Rule 56.1(b)(1)).

In all of his responses to defendants' summary judgment motions, plaintiff has failed to controvert any of the facts asserted by defendants in their Memoranda in Support of Summary Judgment, as the rules require.  Although courts must construe the substantive pleadings of pro se parties liberally, *see Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994), pro se litigants still must comply with the procedural rules or suffer the consequences of noncompliance.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (stating that "[t]his court

has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (citation and internal quotation marks omitted)).  This includes the court's local rules. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992); *see also Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *6 n.3 (D. Kan. Dec. 20, 2011) (explaining that, on summary judgment, "[a]lthough the Court affords some leeway to pro se parties, it cannot merely overlook Plaintiff's failure to state and oppose material facts in compliance with the local rules, and Plaintiff's failure to submit admissible evidence . . . .").

On summary judgment, the court has no duty to search the record on behalf of a litigant to find evidence supporting the litigant's summary judgment interests.  *See Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (explaining that, on a motion for summary judgment, "'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record'" and the district court has no obligation "to comb the record in order to make [the plaintiff's] arguments for him'" (first quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978); then quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000)).

This same standard applies to cases involving pro se litigants.  *See Handy v. City of Sheridan*, 636 F. App'x 728, 2016 WL 66170, at *13 n.15 (10th Cir. Jan. 6, 2016) (affirming summary judgment against a pro se plaintiff, stating that the district court had no duty to review the record independently for evidence that might negate summary judgment, and concluding the district court did not err by failing to consider evidence that the pro se plaintiff attached to his Complaint but did not cite in his opposition to summary judgment (citing *Cross*, 390 F.3d at 1290)); *McKinzy v. I.R.S.*, 367 F. App'x 896, 897 (10th Cir. 2010) (affirming summary judgment against a pro se plaintiff who alleged generally that disputed issues of material fact precluded

summary judgment but failed to identify any part of the record to support his claim because "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995))).

Because plaintiff has converted none of defendants' facts, the court can consider these facts undisputed for purposes of summary judgment.  The court also has reviewed the summary judgment record that defendants have submitted and has determined that it supports the statement of uncontroverted facts that follows.  Also, the court has considered the pleadings, responses, and other materials that plaintiff has submitted to the court even though they fail to comply with the federal and local rules governing summary judgment.  The court has attempted to give them fair construction under the liberal pro se standard when analyzing the summary judgment motions.

### III.    Uncontroverted Facts

The following facts are uncontroverted and stated in the light most favorable to plaintiff, the party opposing summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

#### *Plaintiff Sustains Facial Fractures Outside of Custody*

Plaintiff currently is an inmate at the Shawnee County Jail in Topeka, Kansas.  *See* Doc. 61.  On February 24, 2014—when plaintiff was not yet in custody—he was treated for multiple facial fractures at Stormont-Vail Health Care ("Stormont-Vail") in Topeka, Kansas.  Plaintiff had sustained his injuries in an altercation.  He advised hospital staff that he was "jumped" by several individuals who struck him with their fists.  Plaintiff received treatment in the hospital's emergency room, and a doctor discussed his case with him.  The doctor had previously discussed the case with an otolaryngologist, who suggested that plaintiff's facial fractures did not require

acute intervention but that the otolaryngologist was willing to see plaintiff in his clinic for additional treatment.

On March 19, 2014, plaintiff showed up at the pre-op area of Stormont-Vail to see a different otolaryngologist. This otolaryngologist was in surgery and unable to see plaintiff. The otolaryngologist noted that plaintiff had been noncompliant with pre-operative visits and that the doctor had elected not to perform surgery as an "add-on after 8 pm." Doc. 17-4 at 34.

### Plaintiff's Booking into the Shawnee County Jail

On May 22, 2014, plaintiff was booked into the Shawnee County Jail. During intake, jail officials noted that plaintiff was at risk for a possible drug detox because he had used methamphetamine earlier in the day. During the intake screening, plaintiff advised that he had crushed his jaw, and that he had an upcoming surgery scheduled. But plaintiff was vague and confused about the location of his medical records so the screener did not complete a Request for Information. The screener observed that plaintiff had a depressed area on his left maxilla[2] but noted that plaintiff was in no apparent distress.

### Plaintiff's Altercation in Jail

On May 30, 2014, a nurse in the medical unit of the SCDOC attended to plaintiff after he was in another altercation—this time while housed at the detention center. During the examination, plaintiff was not in acute distress. He reported that he required surgery and that one was scheduled for June 14. The nurse observed that plaintiff's dental function was altered and that he was unable to close his mouth. The nurse noted that the dentist had requested a panographic radiograph. So, SCDOC medical staff referred plaintiff to the emergency room at Stormont-Vail for x-rays of his jaw. He was sent there for examination that same day—May 30, 2014.

---

[2]    The maxilla is the jaw or jawbone.

At the emergency room, a doctor assessed plaintiff as having multiple old facial fractures, one visible acute fracture overlying the left maxillary canine (tooth), and a second incisor (tooth) which were partially dislocated.  The doctor also noted extensive dental disease.  Plaintiff was discharged from Stormont-Vail with instructions to follow up with an otolaryngologist at the University of Kansas Medical Center ("KUMC") and to adhere to a soft diet as tolerated.  The treating doctor made no recommendation for surgery.

After plaintiff returned to the jail from the emergency room, medical staff contacted Dr. Sale who ordered that plaintiff have a follow-up visit at KUMC.  Dr. Sale also put plaintiff on a full liquid diet and proscribed 100 mg of Tramadol taken twice a day for seven days for plaintiff's pain.

### *Plaintiff's Additional Treatment for Facial Injuries*

On May 31, 2014, plaintiff complained that his face was getting worse.  He also stated that his jaw was out of line before he arrived at prison so he said he did not need the liquid diet. Medical staff informed plaintiff that they were addressing his issue.

On June 3, 2014, plaintiff asked for an examination of his face because it was swelling. So, he received an examination that same day.  Dr. Sale ordered x-ray reports, Rocephin (an antibiotic), Amoxicillin (an antibiotic), Tylenol, a soft diet, housing in the medical unit, vital signs taken for three days, ice packs, and an extra mattress.

Plaintiff was examined by an oral surgeon on June 4, 2014.  The oral surgeon noted plaintiff's history included a fractured jaw.  Plaintiff was instructed to use a soft diet and avoid biting into food with his front teeth.  Also, on June 4, 2014, a nurse treated plaintiff.  The nurse noted that plaintiff's left cheek was very swollen and that he was on a liquid diet and Tramadol. The nurse ordered ice packs, Amoxicillin, Tylenol, health shakes, vital signs, and Rocephin.

8

On June 5, 2014, plaintiff received authorization for three visits with an outpatient otolaryngologist referral.  Plaintiff was examined by a physician who noted that plaintiff would need a root canal and close follow up.  The physician also noted that plaintiff would need a splint for six weeks and that plaintiff's decayed teeth required extractions.  The next day, Dr. Sale ordered medical staff to follow through with all recommended orders made for plaintiff to date.

On June 5, 2014, plaintiff requested that medical staff take him off the soft diet that Dr. Sale had ordered.  He stated that he could chew regular food without difficulty, and so he was refusing the soft diet.  On June 17, 2014, plaintiff asked to have three teeth pulled on-site, and he requested medical clearance so that he could start working.  A nurse responded to his inquiry stating that a dental appointment was scheduled.  On June 19, 2014, plaintiff complained that the Tylenol was making him sick, and the nurse responded that his prescription was 650 mg Tylenol twice a day.  Plaintiff also asked for clearance to start working.  On June 20, 2014, plaintiff complained that his cheek was sinking in on the left side and that he was in pain.  A nurse responded that he had a dental appointment and oral surgery scheduled and that they were treating his pain in the meantime.  The nurse also noted that plaintiff would receive an x-ray of his facial bones.

A nurse examined plaintiff on June 23, 2014.  She attributed plaintiff's sunken cheek to dehydration.  She educated plaintiff about drinking more water, and she noted that plaintiff had appointments scheduled to see a dentist and oral surgeon.  On June 24, 2014, plaintiff complained about a bump on the left side of his face.  He was examined at sick call in response to this complaint.

### *Plaintiff's Root Canal*

Plaintiff was scheduled for a root canal on June 25, 2014, but the dentist cancelled the appointment because an emergency arose and the dentist reported that he preferred not to see inmates at his office.  Medical staff noted that they would try to find another dentist.

On June 30, 2014, plaintiff asked for an x-ray of his face.  The nurse responded that one was scheduled.  On July 1, 2014, medical staff prescribed plaintiff Tylenol for 30 days to relieve pain.  On July 2, 2014, an oral surgeon examined plaintiff.  The oral surgeon reported that plaintiff had sensitivity to hot, cold, and pressure.  The oral surgeon performed root canals and placed temporary fillings.  The surgeon also ordered Amoxicillin for plaintiff, and medical staff approved that prescription.

### *Another X-Ray is Performed of Plaintiff's Facial Fracture*

Plaintiff asked for an otolaryngology appointment on July 3, 2014.  A nurse responded to plaintiff's request stating that plaintiff had no new injuries, only dental issues, which the medical staff was treating.  The nurse noted that the doctor would not send plaintiff out for treatment of his healed fractures.  The next day, plaintiff complained that his face was swelling and that he was in pain.  In response, medical staff examined him during sick call.

On July 11, 2014, plaintiff again complained about his facial fracture.  A nurse responded to plaintiff's complaint by stating that the x-rays showed no new fractures.  On July 13, 2014, plaintiff requested an extension on his ibuprofen prescription.  A nurse examined plaintiff and extended his prescription, as he had requested.  The nurse also noted that plaintiff had an x-ray scheduled, but that medical housing was not appropriate at that time.

Plaintiff's face was x-rayed on July 15, 2014.  The radiologist reported the x-ray results as normal.  The radiologist observed no blowout fracture.  On July 17, 2014, plaintiff requested

placement in the medical unit because of his medical needs and safety concerns.  Plaintiff's

request was denied because his x-rays showed no recent facial fractures.

On July 31, 2014, KUMC advised that the otolaryngologist would not see plaintiff until

an ophthalmologist examined him for his complaints about blurry vision.  An ophthalmologist

examined plaintiff shortly thereafter.

### *Plaintiff's Additional Medical Treatment*

On August 8, 2014, plaintiff complained that his wisdom teeth were causing him pain.  In

response, medical staff scheduled a dentist appointment for him.  On August 15, 2014, a dentist

treated plaintiff.  The dentist removed plaintiff's splint and polished his teeth.  The dentist

instructed plaintiff to follow up with a private dentist after his release from detention.  He

completed a referral form for an oral surgeon to remove two decayed teeth.

An otolaryngologist examined plaintiff on September 3, 2014.  The otolaryngologist

noted that he had reviewed a plain film taken in May 2014, and it showed no acute fractures.

Plaintiff denied having double vision, and the doctor noted that an ophthalmologist recently

examined plaintiff and found no acute ocular issues.  The otolaryngologist determined that

plaintiff's issues were resolved.  The otolaryngologist observed that plaintiff's face was

asymmetric, but that this posed no functional consequences.  The otolaryngologist stated that the

only purpose for surgery was restoring facial symmetry and thus it was elective surgery.  The

doctor explained that surgery was an extensive procedure requiring a hospital stay.  The surgery

also would involve re-breaking the bones.  The doctor also described the risks involved with

surgery such as facial nerve injury, facial asymmetry, cheek/upper lip numbness, bleeding, vision

loss, double vision, infection, need for hardware removal, and need for revision surgery.

On September 6, 2014, a nurse examined plaintiff after he was in another altercation at the detention center.  The nurse noted that plaintiff was not in acute distress.  Plaintiff requested another extension of his ibuprofen prescription, and the medical staff granted that request on September 9, 2014.  Plaintiff received another examination by a nurse on September 19, 2014.  Plaintiff reported a pain level of two on a 10-point scale.  He reported no pain when opening his jaw but some redness.  The nurse observed no swelling, redness, or pus around the affected area.  The nurse also found no oral lesions.  Medical staff issued no new orders at that time.

On September 30, 2014, plaintiff had his wisdom teeth removed.  On November 25, 2014, a nurse performing an intake screening noted that plaintiff appeared in no apparent distress.  On December 2, 2014, plaintiff was examined during sick call.  He requested permanent tooth fillings.  The nurse recorded plaintiff's pain level as a zero on a 10-point scale.  The nurse observed no visual evidence of tooth decay or fracture.  The nurse also noted that plaintiff had no swelling, redness, or pus around the affected tooth and no oral lesions.  Plaintiff had additional dental work performed on January 16, 2015, while he was still housed at the detention center.

### Brian Cole

Defendant Brian Cole is the SCDOC Director.  He received plaintiff's complaints of inadequate medical care.  After reviewing the complaints, Mr. Cole consulted with Dr. Sale who informed him that the facial surgery plaintiff had requested was elective and not medically necessary.  Because it is not SCDOC policy to provide elective surgery, SCDOC did not schedule the facial surgery plaintiff had requested.  Mr. Cole communicated this information to plaintiff in response to his complaint.  In doing so, Mr. Cole relied on the medical judgment of Dr. Sale and the outside healthcare provider, KUMC.

12

IV.     **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute" about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to

affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## V.    Qualified Immunity Summary Judgment Standard

Where, as here, a defendant moves for summary judgment based on qualified immunity, the court applies a different standard than the one applied to summary judgment rulings. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008). "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test:  first, the plaintiff must show 'that the defendant's actions violated a constitutional or statutory right'; second, the plaintiff must show that this right was 'clearly established at the time of the conduct at issue.'" *Id.* (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)).  "'If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Nelson*, 207 F.3d at 1205).

To decide whether plaintiff has met his burden of establishing a constitutional violation that was clearly established, the court must construe the facts in the light most favorable to plaintiff.  *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citations omitted). "However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record:  more specifically, as with any motion for summary judgment, when opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Id.* (citations and internal quotations marks and alterations omitted).

## VI.   Analysis

Defendants assert several reasons why they are entitled to summary judgment.  First, defendants Corizon, Brian Cole, and SCDOC assert that plaintiff's claims against them in their official capacities fail because plaintiff received constitutionally adequate treatment and because no policy or custom caused plaintiff to receive inadequate medical treatment.  Second, defendant Brian Cole asserts that he is entitled to qualified immunity against the claims asserted against him in his individual capacity.  Third, all four defendants assert that plaintiff's claims fail as a matter of law because the summary judgment facts demonstrate no genuine issues for trial on plaintiff's claim that defendants violated plaintiff's Eighth Amendment rights.  The court addresses each argument, in turn, below.

### A.  Official Capacity Claims

Defendants Corizon, Brian Cole, and SCDOC assert that plaintiff's claims against them in their official capacities fail as a matter of law.  To establish liability under § 1983 against a defendant in its official capacity, plaintiff must show:  (1) "that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  But liability "will not attach 'where there was no underlying constitutional violation by any of [the officials].'" *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1105 (10th Cir. 2009) (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Los Angeles v.*

15

*Heller*, 475 U.S. 796, 799 (1986))).  When no evidence exists showing that an officer committed a constitutional violation, a plaintiff cannot establish the nexus required for official capacity liability under § 1983.  *Id.*; *see also Myers*, 151 F.3d at 1316 (no official capacity liability under § 1983 if there is no evidence that an officer committed a constitutional violation).

The summary judgment record here does not present any admissible evidence to raise a triable issue of whether (1) defendants violated plaintiff's constitutional rights; or (2) a policy or custom was the moving force behind the alleged violation.  As explained in more detail below, the summary judgment facts, even when viewed in plaintiff's favor, demonstrate that plaintiff received adequate medical care for his facial fractures and that the surgery he requested was elective, not medically necessary.  Without an underlying constitutional violation, plaintiff's official capacity claims fail as a matter of law.  *See Marino v. Mayger*, 118 F. App'x 393, 405 (10th Cir. 2004) (dismissing § 1983 claims against a county and three officers in their official capacities because plaintiff failed to state an underlying constitutional deprivation).  And, even if plaintiff could establish a violation of his constitutional rights, he has not identified any policy or custom that was the moving force behind the alleged violation.  *Myers*, 151 F.3d at 1316.  The court thus grants summary judgment for defendants Corizon, Brian Cole, and SCDOC on the claims plaintiff has asserted against them in their official capacities.

### B.  Individual Capacity Claims

Defendant Brian Cole argues that plaintiff's claims against him in his individual capacity are barred by qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*

To establish a § 1983 claim against an individual defendant asserting the defense of qualified immunity, plaintiff must show facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.

As discussed in more detail below, the summary judgment record fails to demonstrate that defendants violated plaintiff's rights under the Eighth Amendment by denying him adequate medical care during his detention.  Moreover, Mr. Cole did not violate plaintiff's constitutional rights because he relied on the medical judgment of Dr. Sale and the outside provider at KUMC when addressing plaintiff's complaints.  *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (concluding that prison officials committed no constitutional violations when they relied on the diagnosis of medical providers who examined plaintiff).  Because no evidence demonstrates a violation of plaintiff's constitutional rights, the first prong of the qualified immunity analysis entitles Mr. Cole to summary judgment.  The court need not address whether the right at issue was "clearly established" under the second prong.

### C.  Eighth Amendment Claim

All defendants argue that plaintiff cannot demonstrate that defendants violated his Eighth Amendment rights by failing to provide him adequate medical care.  To establish a claim under the Eighth Amendment, a plaintiff must show that defendants acted with "deliberate indifference

17

to serious medical needs." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citations and internal quotation marks omitted). The test for showing deliberate indifference contains both objective and subjective components. *Id.* (citing *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)). "The objective component of the test is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752–53 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). The Tenth Circuit has explained that "a medical need is considered 'sufficiently serious' [under the objective element] if the condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

The subjective component requires a plaintiff to show "'that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Martinez*, 563 F.3d at 1089 (quoting *Callahan*, 471 F.3d at 1159). "'[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Here, the summary judgment evidence fails to establish a triable issue on either the objective or subjective element. First, plaintiff has not shown that he had a sufficiently serious medical need for facial surgery to satisfy the objective element. The summary judgment facts establish that no health care provider ever diagnosed plaintiff as needing surgery to repair his

facial fractures.  *See Oxendine*, 241 F.3d at 1276.  Instead, plaintiff received medical treatment

from an otolaryngologist who concluded that the only purpose for surgery was restoring facial

symmetry.  The otolaryngologist thus determined that surgery was not medically necessary, but

elective.  Plaintiff may disagree with this diagnosis, but his "difference of opinion" about

whether he should have received surgery does not support a claim for violation of his

constitutional rights.  *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("At most, plaintiff

differs with the medical judgment of the prison doctor . . . Such a difference of opinion does not

support a claim of cruel and unusual punishment."); *see also Gee v. Pacheco*, 627 F.3d 1178,

1192 (10th Cir. 2010) (where plaintiff alleged he was not provided the medications that he

desired, but was given other medications, his complaint amounted to a disagreement with the

doctor's medical judgment about the most appropriate treatment and did not rise to the level of

an Eighth Amendment violation).

   Second, plaintiff has not met the subjective component of the deliberate indifference test.

This prong requires him to show that defendants knew he faced a substantial risk of harm and

disregarded that risk to an inmate's health or safety.  *See Martinez*, 563 F.3d at 1089.  The

undisputed facts fail to establish a triable issue on this prong.  To the contrary, the undisputed

facts show that medical staff examined, assessed, and treated plaintiff for his facial injuries on

multiple occasions.  Plaintiff received x-rays, dental examinations, dental treatment, oral surgery,

a wisdom tooth extraction, antibiotics, ice packs, pain medications, and a soft diet.  The summary

judgment record lacks evidence demonstrating that any of the defendants knew that plaintiff

faced a substantial risk of harm and that they disregarded it.  Without evidence that could support

such facts, plaintiff cannot satisfy the subjective component of the deliberate indifference test.

With the materials he filed in his summary judgment response, plaintiff submitted a copy of *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006). *See* Doc. 55 at 64–76. Because it is an opinion issued by the Ninth Circuit, the case is not binding authority on our court. Nevertheless, the court has read this case, and concludes it has no persuasive value here. The facts in *Jett* differ from the undisputed facts here in at least two respects.

First, the prison's doctor in *Jett* failed to send the plaintiff prisoner to an orthopedist for treatment of a fractured thumb. *Id.* at 1094. The plaintiff prisoner fractured his thumb after falling from the top bunk to the floor of the prison cell. *Id.* The plaintiff was treated by an emergency room doctor who instructed plaintiff to see an orthopedist the week following the injury. *Id.* Despite these instructions, the prison's doctor failed to send the prisoner to an orthopedist until six months after his fall. *Id.* at 1095. By then, plaintiff's fracture had healed improperly and his thumb was deformed. *Id.* The Ninth Circuit denied the prison's doctor's summary judgment motion because a reasonable trier of fact could determine from these facts that the prison's doctor was deliberately indifferent to the prisoner's medical needs. *Id.* at 1097.

In contrast here, Dr. Sale followed the orders of the providers who treated plaintiff for his facial fractures. Dr. Sale ordered that plaintiff have a follow-up visit with an otolaryngologist at KUMC. He also ordered medical staff to follow through with all recommended orders from plaintiff's medical providers including x-rays, antibiotics, pain medications, a soft diet, ice packs, and dental treatment. Unlike *Jett*, these facts fail to present a triable issue of deliberate indifference.

Second, the record in *Jett* was "replete with evidence showing the [six month] delay [in seeing the orthopedist] was harmful" to plaintiff. *Id.* at 1098. The summary judgment record included radiology reports showing that plaintiff's thumb fracture did not align properly during

healing, causing a deformity in his thumb.  *Id.*  The court concluded that a trier of fact could infer

that the "deformity was . . . caused by the delay in referring [the prisoner] to an orthopedist who

could have properly set and cast his fractured thumb."  *Id.*  But, here, plaintiff has not shown that

he sustained harm by the medical treatment he received.  The otolaryngologist examined

plaintiff's fractures, determined that they had healed, and concluded that surgery was not

medically necessary.  Without evidence of harm, plaintiff cannot survive summary judgment

against his Eighth Amendment claim.  *See Oxendine*, 241 F.3d at 1276 (explaining that a delay

in medical care only constitutes an Eighth Amendment claim when the plaintiff can show that

the delay caused substantial harm).

   In sum, plaintiff has failed his summary judgment burden because he has not established

that defendants were deliberately indifferent to serious medical needs, and therefore he has not

shown a violation of the Eighth Amendment.  The court thus grants summary judgment against

plaintiff's claims.

**VII.   Conclusion**

   For the reasons explained above, the court grants defendants' summary judgment

motions.

   **IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Corizon

Health, Inc., Brian Cole, and Shawnee County Department of Corrections' Motion for Summary

Judgment (Doc. 34) is granted.

   **IT IS FURTHER ORDERED THAT** defendant Dennis Sale's Motion for Summary

Judgment (Doc. 44) is granted.

   **IT IS SO ORDERED.**

Dated this 16th day of September, 2016, at Topeka, Kansas.

                           **s/ Daniel D. Crabtree**
                           **Daniel D. Crabtree**
                           **United States District Judge**